**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-24569-Civ-COOKE/TORRES

TIC PARK CENTRE 9, LLC, a
Delaware limited liability company,

       Plaintiff,

v.

MICHAEL MANUEL CABOT, *et al.*,

       Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

This matter is before the Court on TIC Park Centre 9, LLC's ("Plaintiff")
Motion to Compel ("Motion") against Michael Manuel Cabot, Catherine Cabot,
Mariner Property Management Services, LLC, and WTK Realty, LLC
("Defendants"). [D.E. 81-1]. Defendants responded to Plaintiff's Motion on June 17,
2017 [D.E. 88] and Plaintiff timely replied on June 19, 2017. [D.E. 89]. Therefore,
Plaintiff's Motion is now ripe for disposition. After careful consideration of the
Motion, response, reply, relevant authority, and for the reasons discussed below,
Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

### I.     *BACKGROUND*

TIC Park Centre 9, LLC ("Plaintiff") commenced this action to seek remedies
for alleged illegal actions against Michael Manuel Cabot ("Cabot"), Catherine Cabot,
Jason Kraus, Mariner Property Management Services, LLC, and WTK Realty

1

(collectively, "Defendants") that resulted in a 2014 loss of a multi-million dollar investment in commercial property (the "Property") in Miami Gardens, Florida. The gist of Plaintiff's Complaint is that Defendants engaged in leasing schemes to steal money from the Property and then concealed the leasing schemes and aided the Property's ultimate loss to foreclosure.

More specifically, Plaintiff is a qualified and accredited investor who purchased a tenant in common interest in the Property in 2007. As part of that purchase, Plaintiff entered into a property and asset management agreement regarding the Property with Mariner Property Management Services, LLC, which was controlled by Cabot and Mark Wojnar ("Wojnar"). Mariner Property Management Services, LLC managed the Property from 2007 until April 2011, when Plaintiff and other tenants in common selected a new manager for the Property. Midgard Management, Inc. began managing the Property in April 2011.

Plaintiff alleges that Mariner Property Management Services, LLC, Cabot and Wojnar violated their duties under the Property Management Agreement and a separate Tenant in Common Agreement by entering into two fraudulent leases with Park Center Med-Suites, LLC and Garden Med-Suites, LLC in 2010 – who then subleased the Property to other tenants. Cabot and Wojnar purportedly used the Mariner Entities as a facade for their own personal economic benefit and harbored monies wrongfully taken from Plaintiff's Property, including through an entity established in their wives' names.

As a result of those subleases, Plaintiff alleges that $130,000 in rental income that otherwise would have been paid to the Property between 2011 and 2012 was diverted from the Property to the owner of those two entities, Jeffrey Miller ("Miller"), and $164,848.59 in broker commissions was paid to WTK Realty, LLC, which Plaintiff alleges were disguised payments of Property income to Cabot and Wojnar.  In other words, Miller allegedly acted through alter egos that made payments of unlawfully obtained monies to Miller's primary business entity, Medical Practice Operations, Inc. ("MPO").  After Midgard Management, Inc. took over the management of the Property in April 2011, it brought eviction actions against Park Centre Med-Suites, LLC and Garden Med-Suites, LLC.

Among other defenses to Plaintiff's Complaint, Defendants have asserted that their actions are (1) protected by the business-judgment rule, (2) commercially reasonable, (3) that the Property suffered from the recent economic recession rather than Defendants' misconduct, and (4) that there was inadequate capital for the Property to meet its financial obligations.[1]

## II.    APPLICABLE LEGAL PRINCIPLES AND LAW

Under the Federal Rules, a party may pose interrogatories related to any matter into which Rule 26(b) allows inquiry, FED. R. CIV. P. 33(a)(2), request the production of any documents that fall within the scope of Rule 26(b), FED. R. CIV. P. 34(a), and serve requests to admit certain matters within the scope of Rule 26(b)(1),

---

[1]    The Court has diversity jurisdiction over all claims asserted in the Complaint because Plaintiff is a citizen of New York and Defendants are citizens of Massachusetts, Florida, or Delaware.

FED. R. CIV. P. 36(a)(1). Rule 26(b) also allows discovery "through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, *2015 Year–End Report on the Federal Judiciary 6* (2015)). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC*, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016). If the opposing party objects to interrogatories or requests, the requesting party may then file a motion to compel production pursuant to FED. R. CIV. P. 37, but only after its counsel, in good faith, confers with opposing counsel to resolve discovery disputes without court intervention. *See* FED. R. CIV. P. 37(a)(1).

The Federal Rules afford the Court broad authority to control the scope of discovery, *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011), but "strongly favor full discovery whenever possible. *See Farnsworth v. Procter & Gamble Co.*, 758 F.3d 1545, 1547 (11th Cir. 1985). Courts must consequently employ a liberal and broad scope of discovery in keeping with the spirit and purpose of these rules. *See Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010) (collecting cases). The "overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore

4

embody a fair and just result." *State Nat'l Ins. Co. v. City of Destin*, 2015 WL 11109379, at *1 (N.D. Fla. Sept. 1, 2015).

However, while the scope of discovery is broad, it is not without limits. *See Washington v. Brown & Williamson Tobacco*, 959 F. 2d 1566, 1570 (11th Cir. 1992); *Rossbach v. Rundle,* 128 F. Supp. 2d 1348 (S.D. Fla. 2000) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340 (1978)). To show that the requested discovery is otherwise objectionable, the onus is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome. *See Rossbach*, 128 F. Supp. 3d at 1354 (citing in part *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)).

Boilerplate objections and generalized responses are improper. *See Alhassid v. Bank of America*, 2015 WL 1120273, at *2 (S.D. Fla. March 12, 2015). This District has frequently held that objections which fail to sufficiently specify the grounds on which they are based are improper and without merit. *See, e.g., Taylor v. Bradshaw,* 2014 WL 6459978 (S.D. Fla. Nov. 14, 2014); *Abdin v. Am. Sec. Ins. Co.*, 2010 WL 1257702 (S.D. Fla. March 29, 2010). More specifically, objections simply stating that a request is "overly broad, or unduly burdensome" are meaningless and without merit. *Abdin*, 2010 WL 1257702 at *1 (quoting *Guzman* v. *Irmadan, Inc.*, 249 F.R.D. 399, 400 (S.D. Fla. 2008)).

In addition to the Federal Rules, Southern District Local Rule 26.1 controls the necessary procedure a party must follow when objecting to a request for production or asserting a claim of privilege. It requires that:

5

> All motions related to discovery, including . . . motions to compel
> discovery . . . shall be filed within thirty (30) days of the occurrence of
> grounds for the motion. Failure to file a discovery motion within thirty
> (30) days, absent a showing of reasonable cause for a later filing, *may*
> constitute a waiver of the relief.

S.D. Fla. L.R. 26.1(i)(1) (emphasis added). On its face, Rule 26.1(i) is therefore plainly discretionary. While the "occurrence" of grounds for a motion tends to be the moment at which responses are filed, this is not always necessarily the case. *See, e.g.*, *Socas v. Northwestern Mut. Life Ins.*, 2008 WL 619322 (S.D. Fla. March 4, 2008) (finding that the "occurrence" triggering the motion to compel was when the requesting party examined certain documents months after their initial requests had been answered); *United States v. Polo Pointe Way, Delray Beach, Fl.*, 444 F. Supp. 2d 1258, 1261 (S.D. Fla. 2006) (finding that the "occurrence" at issue was a deposition that took place after responses were filed).

In pertinent part, the Local Rules also provide that where a claim of privilege is asserted, the objecting party must prepare "a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection" except for "*written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action*." S.D. Fla. L.R. 26.1(g)(3)(C) (emphasis added). Furthermore, "[w]here a claim of privilege is asserted in objecting to any . . . production demand . . . and an answer is not provided on the basis of such assertion . . . [t]he attorney asserting the

6

privilege shall . . . identify the nature of the privilege . . . being claimed." S.D. Fla. L.R. 26.1(g)(3)(B)(I).

### III.   ANALYSIS

Plaintiff's Motion is directed at the Defendants' allegedly defective discovery responses to Plaintiff's requests for production.  Plaintiff argues that Defendants have objected to Plaintiff's requests for production on the same unmeritorious grounds Defendants recently asserted when moving to quash subpoenas Plaintiff issued to various non-parties.  Defendants have also purportedly declined to provide privilege logs despite asserting privileges in their responses, and despite the Court's rulings requiring a privilege log for similar responses.  [D.E. 66, 80].  Because Defendants have allegedly produced no responsive documents, Plaintiff moves the Court to compel Defendants to supplement their responses, produce responsive documents, and provide a proper privilege log for any responsive documents withheld on the basis of any privilege.

On April 4, 2017, Plaintiff served requests for production on Defendants.  On May 6, 2017, Defendants responded to Plaintiff's requests with objections and responses but purportedly produced no documents or privilege logs.  Plaintiff's counsel allegedly contacted defense counsel on May 8, 2017 identifying deficiencies and requesting supplemental responses, a proper privilege log, and responsive documents.  Defense counsel responded on May 15, 2017 by sending Plaintiff's counsel amended Rule 26(a)(1) initial disclosures but supposedly produced no supplemental responses, privilege logs, or documents.  Because Defendants have

7

allegedly failed to comply with their discovery obligations, Plaintiff seeks to compel the production of all relevant materials.

As an initial matter, Plaintiff argues that there are deficiencies applicable to all of Defendants' responses.[2]  First, Defendants have allegedly produced no responsive documents.  Second, Plaintiff claims that Federal Rule of Civil Procedure 34(b)(2)(C) requires that any discovery objection should specify whether documents are being withheld on the basis of any objection.  And third, Plaintiff suggests that Rule 34 requires Defendants to identify the form of documents Defendants intend to produce.

In response, Defendants take issue with Plaintiff's document requests because they are purportedly overly broad and no effort has allegedly been made to tailor the requests to the specific issues, claims, and defenses presented in this case. Second, Defendants argue that Plaintiff's requests for production are not limited to any time period and that Plaintiff's claims should only concern the time period of 2010 through September 2014.  Because Plaintiff's requests are not limited to the 2010 through September 2014 time period at issue, Defendants argue that the discovery requests encompass information that is simply not relevant to Plaintiff's claims.  Third, Defendants believe that Plaintiff's broad requests for the personal financial information of Michael and Catherine Cabot should be denied because any relevant information is already contained in the banking and financial records regarding the entities at issue.  And fourth, Defendants request that the Court give

---

[2]    Specifically, Plaintiff's Motion is directed at the following discovery responses: requests nos. 1-10, 19-21, 24-36, 40, 59-62, 65-70, and 73.

Defendants an additional forty-five (45) days to produce any relevant documents and prepare a proper privilege log.

### A. *Whether the Discovery Requests are Facially Overbroad*

The first dispute between the parties concerns the scope of Plaintiff's requests and whether they are facially overbroad. Defendants contend that Plaintiff made no effort to tailor the requests for production to the specific issues, claims, and defenses presented in this action and that they are vague, overly broad in scope, and not reasonably particularized. *See, e.g.*, *Audiotext Commc'ns v. U.S. Telecom, Inc.*, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995) ("Requests should be reasonably specific, allowing the respondent to readily identify what is wanted.").

As support, Defendants rely primarily on the decision in *Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Florida*, 2010 WL 5093746 (S.D. Fla. Dec. 8, 2010), where the court was presented with similar types of requests for documents that defendants objected to as overly broad and the court denied, in part, the plaintiff's motion to compel:

> Defendants argue that these document-production requests are overly broad, and the Court agrees. Some of the requests do not even seek information relevant to the claims and defenses here. *See, e.g.,* Pl.'s Req. for Produc. No. 3 (requesting all documents that *mention* Great Lakes). And those that purport to request relevant documents do so in the broadest way possible. *See, e.g.,* Pl.'s Reqs. for Produc. Nos. 1, 2 (requesting all documents relating to claims and defenses); *id.* Nos. 6, 7 (seeking all documents reflecting ownership of the marks by anyone). These requests are in no way tailored to the issues presented here and thus are not "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Also, given the fairly complex nature of this case, the burdens that these requests would place on Defendants outweigh any likelihood that the responsive documents would add new and useful information to the discovery

record.  *See* FED. R. CIV. P. 26(b)(2)(C)(3).  For these reasons, Plaintiff's Motion Compel is denied with respect to Requests for Production Nos. 1 through 7, 9, and 43.

*Great Lakes Transp. Holding LLC*, 2010 WL 5093746, at *5.

Defendants also contend that Plaintiff's discovery requests are improper because almost all of them use vague terms such as "concerning" or "relating to". Defendants point out that many courts have encountered similar discovery requests and held that the terms are nearly always inappropriate because they are – by their plain meaning – vague and ambiguous:

> The Court notes initially that most of these document requests use the terms 'relate to' or 'concerning' in a way that makes the requests overbroad, vague, and ambiguous.  Because these terms are broad, they might well encompass irrelevant information.   Nor can Defendants be certain exactly what information the discovery requests cover and therefore what information is responsive.

*Great Lakes Transp. Holding LLC*, 2010 WL 5093746, at *6 (S.D. Fla. Dec. 8, 2010) (internal citations omitted); *see also Carter v. Archdale Police Dep't*, 2014 WL 1774471, at *5 (M.D.N.C. May 2, 2014) ("'A request for all documents 'relating to' a subject is usually subject to criticism as overbroad since . . . all documents 'relate' to all others in some remote fashion.  Such a request thus unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request.'") (quoting *Massachusetts v. United States Dep't of Health & Human Servs.,* 727 F. Supp. 35, 36 n. 2 (D. Mass. 1989)); *Sonnino v. Univ. of Kan. Hosp. Auth.,* 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (holding that request for production seeking "all documents that relate to or concern" a particular topic was "overly broad on its face"); *Audiotext Commc'ns,*

10

1995 WL 18759, at *1 (explaining that discovery requests worded too broadly "function like a giant broom, sweeping everything in their path, useful or not").

In reply, Plaintiff contends that Defendants never complained that the requests for "all documents", or "all communications" were not sufficiently particularized. In fact, Plaintiff claims that the Defendants never responded to Plaintiff's May 8, 2017 meet and confer letter nor raised the overbreadth objections they now assert. Plaintiff's requests purportedly contain defined terms and are particularized to the allegations in the pleadings. Because Plaintiff's requests contained defined terms, including the terms "document," and "communication," Plaintiff argues that the Defendants cannot genuinely contend that they do not understand what materials Plaintiff seeks in discovery.

After full consideration of the arguments presented, Defendants' response is largely well taken. "Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not." *Id.* at *1. In other words, overbroad requests "require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." *Id.* at *1.

Here, many of Plaintiff's discovery requests are overly broad because there are no meaningful limitations on the documents requested. For example, request no. 67 seeks "[a]ll written statements obtained from or based on interviews with any

11

person concerning this action." [D.E. 88]. There is little doubt that Plaintiff's request encompasses a vast array of individuals that likely have no relevancy to this case. In other words, many of Plaintiff's requests, as they stand now, are akin to a fishing expedition because they seek documents concerning various topics with no particular focus on the claims at issue in this action. While Plaintiff may have included definitions for the terms "document," "communication," and "concerning," those explanations are often unhelpful because they merely refer to large categories of information that fail to narrow any of the specific requests. Plaintiff has also failed to present persuasive reasons in support of all the documents requested or explain why this action requires such a broad array of discovery. Although many of Plaintiff's discovery requests are facially overbroad, we will address – further below – those requests that are both clearly relevant and that can be more easily narrowed in light of the issues presented.

### B.   *Whether the Discovery Requests are Overbroad in Time*

Next, Defendants contend that the requests for production are not limited to any time period and that the substance of Plaintiff claims only concerns the years 2010 through September 2014. Because Plaintiff's requests are not limited to that time frame, the requests allegedly encompass information that is irrelevant to the claims in this case. Defendants further suggest that Plaintiff's Complaint does not contain any substantive allegations of fact supporting a 2006 or 2007 to September 2014 time period because the allegations are too conclusory. As such, Defendants

believe that the 2010-2014 time period is most relevant and that Plaintiff's discovery requests should be narrowed accordingly.

In response, Plaintiff argues that the Court already rejected a similar argument that Defendants raised in their motions to quash the subpoenas to various non-parties. The arguments presented here are allegedly no different and Plaintiff suggests that Defendants' contentions are actually an improper motion for reconsideration. Because the Defendants have essentially raised the same arguments that were unsuccessfully presented in their motions to quash Plaintiff's subpoenas, Plaintiff contends that the temporal scope of 2006 or 2007 to September 2014 should be equally applicable here.

The Court agrees with Plaintiff that the issue of temporal scope has been argued before and that the relevant time period set forth in the Court's prior Order on this question remains sound. [D.E. 85]. As stated previously, after the alleged sham entities were created, Wojnar purportedly travelled to Brooklyn, New York in March of 2007 to meet with the Plaintiff's owner and to induce the $2 million dollar investment. In reliance on several misrepresentations, Plaintiff purportedly exchanged real estate held in New York for a 17.896% ownership in the Property. From 2007 until 2011, Wojnar or Cabot sent correspondence to Plaintiff requesting approval for leases and construction projects. The alleged illegal conduct continued until it harmed the Property and its owners' cash flow that the Property entered foreclosure proceedings in September 2014. Because the relevant events allegedly

began in either 2006 or 2007 and ended with the Property's foreclosure in September 2014, Plaintiff's discovery requests shall be limited to this time frame.

### C.     *Whether the Discovery Requests Seek Irrelevant Information*

In requests nos. 19-21, Plaintiff seeks the personal financial information of Michael and Catherine Cabot.  Aside from the requests being vague and overbroad in scope – as discussed above – Defendants argue that Plaintiff's requests for the personal financial information of the Cabots is irrelevant because the information sought is already contained in the banking statements and financial documents regarding the Mariner and WTK entities.  As such, Defendants believe that any relevancy is outweighed by the sensitive and private nature of the financial records requested.

However, Defendants' arguments have already been rejected in the Court's prior Order on various motions to quash Plaintiff's subpoenas.  [D.E. 85].  In that Order, the Court found that the financial information of Michael and Catherine Cabot were central to the fraudulent conduct alleged because the Cabots purportedly pursued the fraudulent scheme at issue in this action for their own personal gain.  The financial scheme allegedly included transfers among both personal and business accounts as a way to conceal the illegal activity.  Defendants' argument is also unpersuasive – for an entirely separate reason – because in order to prevent the discovery of confidential information, the objecting party must first show that the information is confidential and that its disclosure might be harmful.  *See, e.g.*, *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985)

14

("Under Rule 26(c)(7), there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery.  In order to resist discovery of such confidential information, a party must first establish that the information sought is indeed confidential and then demonstrate that its disclosure might be harmful. Once these requirements are met, the burden shifts to the other party to establish that discovery of the trade secrets or confidential information is relevant and necessary to the action.").  Defendants do neither in their response.  As such, Defendants' arguments, with respect to the personal financial information of the Cabots, lack merit because the information requested relates directly to the level of fraudulent activity engaged in during the relevant time period.

Because we have now considered the Defendant's three main arguments, we will now turn our attention to a subset of Plaintiff's requests that are both relevant and more easily tailored to the issues presented in this action.

### D.   *Request 1*

In request 1, Plaintiff seeks "[a]ll documents concerning the preservation, loss, destruction, or deletion of any documents concerning the Property or the claims asserted in Plaintiff's complaint."  [D.E. 81-1].  Defendants object to this discovery request because it is purportedly vague and unclear as to whether Plaintiff seeks documents regarding document preservation policies or some other type of document.  In response, Plaintiff indicates that the request is clearly focused on any document preservation or litigation hold policies, and that Defendants should produce any records that may exist.  When coupling the plain language of

request 1 with Plaintiff's clarification in response, we agree that request 1 is both relevant and clear as to the type of documents requested.  As such, Plaintiff's Motion, as it relates to request 1, is **GRANTED**.

### E. *Requests 2 and 4*

In requests 2 and 4, Plaintiff seeks all documents concerning the formation of each Mariner entity and WTK.  [D.E. 81-1].  Defendants' response is that the document requests are improper because the only entities that were involved with the Property included (1) Mariner Asset Management, LLC, (2) Mariner Property Management Services, LLC, (3) Mariner Park Centre H, LLC, (4) Mariner Park Centre S, LLC, and (5) Mariner Park Centre M, LLC.[3]  Defendants also argue that the requests are not proportional to the needs of the case considering the marginal importance of the requested documents to the claims and defenses in this action. Therefore, Defendants suggest that the burden and expense of identifying and producing these documents outweigh any likely benefit.

Yet, Defendants' arguments are unpersuasive given the allegations in Plaintiff's Complaint that Wojnar and Cabot are the owners and alter egos of the Mariner entities and WTK – both of which were created to purportedly further a fraudulent scheme.  [D.E. 1 at ¶ 13] ("Wojnar and Cabot used the Mariner Entities' bank accounts and corporate shield to embezzle, harbor, and wrongfully take and shield monies rightfully belonging to Plaintiff and other Property owners, the

---

[3]    The only Mariner entity omitted in Plaintiff's response was Mariner Asset Management Services, LLC.  When coupled with the five entities identified above, they are collectively referred to as the "Mariner entities."

Property's mortgage lender, and the Property's tenants."); [D.E. 1 at ¶ 19] ("Wojnar and Cabot created WTK solely for the unlawful and fraudulent purpose of concealing monies wrongfully taken from the Property's incomes, namely, leasing commissions, without the knowledge or consent of Plaintiff or any of the other Property owners, and then using the monies for personal and family benefits.")]. The documents requested are therefore pertinent to the discovery of whether the Mariner entities or WTK were formed for the purpose of defrauding Plaintiff.  To this extent, Plaintiff's Motion is **GRANTED** because both the Mariner entities and WTK are clearly relevant to this action and the request for documents is proportionally tailored.

### F. *Requests 3, 5, 6, and 7*

In requests 3, 5, 6, and 7, Plaintiff seeks all documents concerning the ownership interest of any Mariner entity and WTK.  Defendants' response is that the requests are overbroad because they are not relevant to the parties' claims or defenses.  However, as stated earlier, Plaintiff's Complaint alleges that Wojnar and Cabot are the owners and alter egos of the Mariner entities and WTK – both of which were created to purportedly further a fraudulent scheme.  The document requests are therefore clearly relevant and carefully tailored to the issues presented because Plaintiff seeks documents that demonstrate how Defendants orchestrated their allegedly fraudulent scheme.   In other words, by seeking documents concerning ownership interests in any Mariner entity and WTK, Defendants seek to

develop a complete picture on how these companies operated in defrauding Plaintiff. Therefore, in response to requests 3, 5, 6, and 7, Plaintiff's Motion is **GRANTED**.

### *IV.   CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel is **GRANTED in part** and **DENIED in part** [D.E. 81-1].

A. Defendants are compelled to produce responsive documents in connection with requests 1-7.   To this extent, Plaintiff's Motion is **GRANTED**. Defendants shall comply within fourteen (14) days absent agreement of the parties otherwise.

B. As for the remaining discovery requests, we find that they are facially overbroad and therefore Plaintiff's Motion must be **DENIED** with leave to re-serve Defendants with proper discovery requests that are targeted in scope and relevant to the issues in this action.[4]   Plaintiff's discovery requests should be detailed, reasonably specific, pertinent to the claims presented, and supported by allegations in the Complaint.

---

[4]      As for Defendants' request for an additional forty-five (45) days to produce discovery already agreed upon to Plaintiff, including a proper privilege log, it appears that the parties have not properly conferred on this issue before seeking Court intervention.   As such, the parties shall work cooperatively on a production schedule and agree upon a mutually desirable time period for Defendants to provide a proper privilege log for document requests that are not in dispute.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of July, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge