UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-24569-Civ-COOKE/TORRES

TIC PARK CENTER, 9 LLC,
a Delaware limited liability company,

        Plaintiff,

v.

MICHAEL MANUEL CABOT, *et al.*,

        Defendants.

_____/

## OMNIBUS ORDER
## ON PLAINTIFF'S MOTION TO COMPEL AND FOR CONTEMPT

This matter is before the Court on TIC Park Centre 9, LLC's ("Plaintiff") motion [D.E. 102] for an Order holding Mark Joseph Wojnar ("Wojnar"), Jeffrey K. Miller ("Miller"), and Medical Practice Operations, Inc. ("MPO") (collectively, the "Non-parties") in contempt of Court for failure to comply with the Court's June 19, 2017 Orders [D.E. 84-85] and motion to compel [D.E. 103] against Divine Blalock Martin & Sellari, P.A. ("Divine Blalock"). Miller and MPO responded to Plaintiff's motion for contempt on September 29, 2017 [D.E. 105] to which Plaintiff replied the same day. [D.E. 109]. With respect to Plaintiff's motion to compel, Divine Blalock responded on October 3, 2017 [D.E. 111] to which Plaintiff replied on October 11, 2017 [D.E. 115]. Therefore, Plaintiff's motions are ripe for disposition. After careful consideration of the motions, responses, replies, relevant authorities, and for the reasons discussed below, Plaintiff's motions are **DENIED**.

1

## I. BACKGROUND

Plaintiff commenced this action to seek remedies for alleged illegal actions against Michael Manuel Cabot ("Cabot"), Catherine Cabot, Jason Kraus, Mariner Property Management Services, LLC, and WTK Realty (collectively, "Defendants") that resulted in a 2014 loss of a multi-million dollar investment in commercial property (the "Property") in Miami Gardens, Florida. The gist of Plaintiff's Complaint is that Defendants engaged in leasing schemes to steal money from the Property and then concealed the leasing schemes and aided the Property's ultimate loss to foreclosure.

More specifically, Plaintiff is a qualified and accredited investor who purchased a tenant in common interest in the Property in 2007. As part of that purchase, Plaintiff entered into a property and asset management agreement regarding the Property with Mariner Property Management Services, LLC, which was controlled by Cabot and Mark Wojnar ("Wojnar"). Mariner Property Management Services, LLC managed the Property from 2007 until April 2011, when Plaintiff and other tenants in common selected a new manager for the Property. Midgard Management, Inc. began managing the Property in April 2011.

Plaintiff alleges that Mariner Property Management Services, LLC, Cabot and Wojnar violated their duties under the Property Management Agreement and a separate Tenant in Common Agreement by entering into two fraudulent leases with Park Center Med-Suites, LLC and Garden Med-Suites, LLC in 2010 – who then subleased the Property to other tenants. Cabot and Wojnar purportedly used the

2

Mariner Entities as a facade for their own personal economic benefit and harbored monies wrongfully taken from Plaintiff's Property, including through an entity established in their wives' names.

As a result of those subleases, Plaintiff alleges that $130,000 in rental income that otherwise would have been paid to the Property between 2011 and 2012 was diverted from the Property to the owner of those two entities, Jeffrey Miller ("Miller"), and $164,848.59 in broker commissions was paid to WTK Realty, LLC, which Plaintiff alleges were disguised payments of Property income to Cabot and Wojnar. In other words, Miller allegedly acted through alter egos that made payments of unlawfully obtained monies to Miller's primary business entity, Medical Practice Operations, Inc. ("MPO"). After Midgard Management, Inc. took over the management of the Property in April 2011, it brought eviction actions against Park Centre Med-Suites, LLC and Garden Med-Suites, LLC.

Among other defenses to Plaintiff's Complaint, Defendants have asserted that their actions are (1) protected by the business-judgment rule, (2) commercially reasonable, (3) that the Property suffered from the recent economic recession rather than Defendants' misconduct, and (4) that there was inadequate capital for the Property to meet its financial obligations.[1]

---

[1]  The Court has diversity jurisdiction over all claims asserted in the Complaint because Plaintiff is a citizen of New York and Defendants are citizens of Massachusetts, Florida, or Delaware.

### A. *Whether the Non-parties should be held in contempt*

The first issue presented is whether Miller and MPO should be held in contempt for failing to comply with the Court's prior orders. On June 19, 2017, the Court ordered the Non-parties to comply with Plaintiff's subpoenas and produce responsive documents within fourteen days. On June 9, 2017, Plaintiff gave notice to the Non-parties of the Court's Orders via email and U.S. mail. Plaintiff also reminded the Non-parties about their obligations to comply on June 23, 2017. Because the Non-parties failed to produce any documents, the Court scheduled a hearing and required the Non-parties to show cause on why they should not be held in contempt for failing to comply.

On August, 10, 2017, the Non-Parties appeared and indicated that they intended to deliver the requested documents by no later than August 14, 2017. As of September 29, 2017, Plaintiff alleges that none of the Non-parties have complied with the Court's orders.[2] Plaintiff suggests that the Court should hold all of the Non-parties in contempt because they violated the directives given at the August 10, 2017 hearing. Plaintiff alleges that Wojnar did not deliver the documents when he was ordered to do so and that Miller never produced any documents and purportedly lied that he had an attorney who possessed the requested documents. Because the Non-parties have supposedly failed to provide any explanation or

---

[2] Plaintiff explains that Wojnar failed to deliver the requested documents by August 14, 2017 as required. Instead, Wojnar emailed Plaintiff four Dropbox folders on August 16, 2017.

justification for their violations, Plaintiff requests that we hold all of the Non-parties in contempt and issue an appropriate sanction to compel their compliance.

In response[3], Mr. DeSouza – counsel for Miller and MPO – argues that the declaration submitted in support of Plaintiff's motion is disingenuous at best. On August 16, 2017, Mr. DeSouza claims that he left a voicemail with Plaintiff's counsel and sent an email notifying Plaintiff that Miller and MPO had retained him in connection with the subpoenas issued in this case. On August 25, 2017, Mr. DeSouza explains that Miller delivered three boxes containing the responsive documents to Mr. DeSouza's office. Following Plaintiff's alleged instruction to arrange for a copy service to pick up the documents, Mr. DeSouza contends that he contacted a local litigation support vendor to deliver the requested items and that he put the vendor in contact with Plaintiff to arrange for payment.

Thereafter, on September 18, 2017, Mr. DeSouza claims that he received a phone call from the litigation support vendor stating that payment arrangements had been made with Plaintiff and that the documents would be picked up for copying. At some unspecified date, Mr. DeSouza mentions that the vendor appeared at his office and took possession of the documents. On September 22, 2017, Mr. DeSouza argues that he received an email from Plaintiff – that was later forwarded to the Court – indicating that no documents from Miller or MPO had been produced. Mr. DeSouza responded to Plaintiff's email and asked how Plaintiff could file a motion for contempt in good faith when the vendor picked up the

---

[3] Wojnar, nor any attorney on his behalf, filed a response to Plaintiff's motion for contempt.

5

documents to deliver to Plaintiff. Plaintiff's counsel responded to Mr. DeSouza by stating "My fault, that is actually funny. Enjoy your weekend." [D.E. 105-1].

Mr. DeSouza takes issue with Plaintiff and its motion because it allegedly contains a misrepresentation that documents have not been delivered when the vendor arranged for their delivery for Plaintiff's benefit. As such, Miller and MPO indicate that they have nothing more to produce because they are no longer in possession of the responsive documents. Rather, the documents are either in the possession of the vendor or in Plaintiff's possession. Because Plaintiff's request for an order of contempt is purportedly offensive, Miller and MPO believe that Plaintiff's motion should be denied and that Plaintiff's counsel should be required to explain why he thought it appropriate to misrepresent the Court on the status of the document production.

In reply, Plaintiff contends that – as of September 29, 2017 – Plaintiff has received no documents from Miller, MPO, Mr. DeSouza, or a legal vendor. Plaintiff claims that it is false that it retained a legal vendor and that Mr. DeSouza is misrepresenting to the Court how the requested documents would be delivered. On or about September 14, 2017, Plaintiff explains that it received a phone call from a legal vendor that indicated that Mr. DeSouza would not release any documents until Plaintiff agreed to pay for their production. As such, Plaintiff believes that its motion should be granted and that the Court should require Mr. DeSouza to explain why he has omitted key facts and allowed his client to ignore the Court's Orders.

Courts may impose sanctions for litigation misconduct upon a finding of bad faith. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1306 (11th Cir. 2009) ("The key to unlocking a court's inherent power is a finding of bad faith."). A court may exercise its inherent powers "even if procedural rules exist which sanction the same conduct." *In re Mroz,* 65 F.3d 1567, 1575 (11th Cir. 1995). However, a court must exercise its inherent powers "with restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991).

"A party demonstrates bad faith by, *inter alia,* delaying or disrupting the litigation or hampering enforcement of a court order." *Eagle Hosp. Physicians,* 561 F.3d at 1306. "Without a 'smoking gun' statement from the plaintiff, . . . a district court makes a determination of bad faith by drawing inferences from the conduct before it." *Byrne v. Nezhat,* 261 F.3d 1075, 1125 (11th Cir. 2001). The court's sanctioning power is therefore broad in scope as it includes "the ability to impose civil and criminal contempt." *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 831 (1994)); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 368 (9th Cir. 1992) ("Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)).

Beginning with Wojnar, there is no basis to hold him in contempt for his failure to comply with the Court's directives at the August 10, 2017 hearing. While Wojnar failed to deliver any hard copy documents to Plaintiff by August 14, 2017 as required, Wojnar sent Plaintiff a Dropbox folder on August 16, 2017 with the responsive documents. This two day delay was minimally prejudicial. There is also no reason why Plaintiff cannot print the documents to acquire the same information.[4]

Given these facts, a civil contempt sanction is improper because sanctions are are only ordinarily imposed to (1) coerce the contemnor to comply with a court order, or (2) to compensate a party for losses suffered as a result of the contemnor's act. *See Sheet Metal Workers Local 441 Health & Welfare Fund, et al., v, Unatank Corp.*, 2008 WL 2163915 *2 (S.D. Ala. May 19, 2008) (citing *McGregor v. Chierico*, 206 F.3d 1378, 1385 n.5 (11th Cir. 2000)). Stated differently, courts consider the type and magnitude of the harm threatened by the continuing contumacy and the likely effectiveness of the imposed sanction in bringing about the desired result. *See U.S. v. Kahn*, 2004, WL 1089116 (M.D. Fla. March 30, 2004) (citing *United States v. United Mine Workers of America,* 330 U.S. at 304).

No sanction would materially change the situation presented because Plaintiff is in possession of the documents requested and Plaintiff has hardly suffered any loss/prejudice as a result of Wojnar's failure to strictly comply with the

---

[4] Wojnar stated at the August 10, 2017 hearing that he was experiencing financial difficulties and that printing the requested documents would be an economic burden. This may explain why Wojnar decided to email the documents as opposed to delivering hard copies.

Court's Orders. Because Wojnar complied in many respects with the Court's directives and a sanction would have little to no effect in achieving a result that Plaintiff can now achieve on its own, we decline to impose a sanction that would be punitive in nature. *See Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc.*, 2009 WL 10667730, at *7 (S.D. Fla. June 10, 2009) (citing *Matter of Trinity Indus., Inc.*, 876 F.2d 1485, 1493 (11th Cir. 1989)). Therefore, to this extent, Plaintiff's motion is **DENIED**.

As for Plaintiff's motion to hold Miller and MPO in contempt, it appears that the disagreement as to why the requested documents have not been delivered boils down to which party should be compelled to pay for the delivery of the documents. Plaintiff claims that it made no arrangements with a legal vendor whereas Miller and MPO argue the opposite. Based on Plaintiff's September 22, 2017 email response to Mr. DeSouza where Plaintiff stated "My fault, that is actually funny," we find Mr. DeSouza's declaration more credible as to who arranged for the legal vendor to pick up the responsive documents. Plaintiff noticeably fails to rebut the September 22 email nor does Plaintiff explain why its motion to the Court was "funny".

In any event, this is such a trivial disagreement and the Court expects both parties to engage in reasonable compromise to conserve motion practice and promote judicial economy. As such, Plaintiff's motion is **DENIED** and the parties are ordered to each pay one-half of the cost for the delivery of the responsive documents from the legal vendor so that this case can proceed forward. To the

extent either party requires the assistance of the other, both shall work cooperatively so that Plaintiff receives the responsive documents. A failure to do so may result in sanctions to both parties.

## B. *Whether Divine Blalock should be Compelled to Produce Documents*

The next issue is Plaintiff's renewed motion to compel Divine Blalock to comply with Plaintiff's subpoena. Plaintiff argues – that as of September 28, 2017 – Divine Blalock has not properly responded to Plaintiff's subpoena or the Court's Order because there remains outstanding accounting records relevant to the claims in this action that Divine Blalock has failed to produce. More specifically, Plaintiff suggests that it has tried to meet and confer with Divine Blalock after receiving some documents, but that there are items that have not been produced in a useable or readable format.

In response, Divine Blalock argues that the files – that Plaintiff complains are unreadable – are password protected and that Divine Blalock no longer has the credentials to open them due to the age of the files. Despite Divine Blalock's attempts to provide Plaintiff with all of the documents and information requested, Plaintiff is allegedly pursuing a motion to compel where it is clear that Divine Blalock no longer has the information necessary to open certain files that were produced. Because Divine Blalock has purportedly complied with the Federal Rules and produced everything in its possession, it claims that it has no way of providing the passwords to certain files because the applicable passwords are very old and no longer accessible.

In Plaintiff's reply, Plaintiff notes that its expert has remedied some of the defective documents but that Plaintiff still cannot open some files. Plaintiff alleges that Divine Blalock bears a greater responsibility than a typical non-party because it first refused to respond to the subpoena and only produced documents once the Court ordered compliance. Plaintiff also argues that the documents produced were not responsive to each item in the subpoena and that they were, in some respects, incomplete. Therefore, Plaintiff contends that Divine Blalock should be compelled to produce the unreadable files again and certify compliance that each category of documents requested in the subpoena have been produced, including in their native format.

After full consideration of the arguments presented, Divine Blalock's response made clear that no passwords exist to open some of the files that were previously compelled and the Court accepts this averment at face value. *See Doe I v. Karadzic,* No. 93 Civ. 878, 1997 WL 45515, at *6 (S.D.N.Y. Feb. 4, 1997) (quoting *Zervos v. S.S. Sam Houston,* 79 F.R.D. 593, 595 (S.D.N.Y. 1978)); *see also Doe I v. Karadzic,* No. 93 Civ. 878, 1997 WL 45515, at *6 (S.D.N.Y. Feb. 4, 1997) (quoting *Zervos,* 79 F.R.D. at 595) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production . . . .").

There is nothing improper about a response that asserts that a document or password does not exist and courts have uniformly adhered to this position. *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 12 (D.D.C. 2007)

(declining to compel production where party objected "on the basis that it believes no [responsive] document to exist [and] . . . [i]f a document is not in the possession, custody or control of a party, then it clearly cannot be turned over."); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997) ("Under ordinary circumstances, a . . . good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production . . . .") (citation omitted); 4 Wright & Miller, *Federal Practice & Procedure: Civ. 2d* § 2213 (2d ed. 1994) (noting that nothing more is required in responding to discovery request than response "saying that a particular document is not in existence or that it is not in the responding party's possession, custody, or control").

While Plaintiff may express skepticism with the veracity of Divine Blalock's representation, the Court has no record basis – and the Plaintiff cites none – to suggest that Divine Blalock's response is inaccurate or misleading other than on the basis of speculation. As such, Plaintiff's motion is **DENIED**.[5]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of October, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[5] Of course, if it is later established that Divine Blalock has misled the Court on its accessibility to passwords, sanctions could still follow.